IN RE TAYLOR (STATE *v.* TAYLOR).

(Filed 13 October, 1948.)

**1. Constitutional Law § 39: Criminal Law § 57d—**

Where a person has been convicted of crime and final judgment entered, the proper procedure for him to challenge the constitutionality of his conviction for matters *dehors* the record is by writ of error *coram nobis.* Whether petition for the writ should be made to the trial court or whether petition for permission to file the petition in the trial court should first be made to the Supreme Court in the nature of a writ of error *coram nobis, quære?*

**2. Constitutional Law § 34d—**

Where defendant in a prosecution less than capital is unable to employ counsel, the appointment of counsel for him is discretionary with the trial court; but in a capital case the right to the appointment of counsel is vouchsafed by provision of both the State and Federal Constitutions and by statute.

**3. Constitutional Law § 34a—**

Failure to appoint counsel for a person prosecuted for a capital offense relates only to due process and not the guilt or innocence of the accused, and therefore even though the conviction be set aside upon such ground, the accused would not be entitled to his discharge but only to a vacation of the judgments against him and a restoration of the indictments to the docket for trial.

**4. Habeas Corpus § 2—**

*Habeas corpus* is inappropriate to test the validity of a trial which resulted in conviction and final judgment against petitioner, both by reason of established procedure and also by statute. G. S., 17-4.

**5. Habeas Corpus § 8—**

Petition for *certiorari* to review judgment on return of writ of *habeas corpus* issued in petitioner's endeavor to collaterally attack a final judgment of conviction, will be dismissed.

Petition by Laurie D. Taylor, Jr., for *certiorari* to review judgment on return to writ of *habeas corpus*. Petition filed 7 September, 1948.

The circumstances leading up to and surrounding the present application are these:

The petitioner, Laurie D. Taylor, Jr., is in the Central Prison at Raleigh under several sentences, three for life. On 8 July, 1948, he applied to the resident judge of the Seventh Judicial District, Honorable W. C. Harris, for a writ of *habeas corpus*, alleging that he was unable to employ counsel, and was denied the benefit of counsel, when he was required to plead to three capital charges of burglary and four indictments for larceny at the January Term, 1947, Pitt Superior Court. As Honorable John J. Burney was the presiding judge at this term of court, the petition for *habeas corpus* was referred to him for hearing and disposition. He heard the matter in Wilmington on 19 July, and dismissed the writ.

Thereafter, on 7 September, the petitioner applied here for writ of *certiorari* to bring up the judgment on *habeas corpus* for review. (Actually, the application is, in form, one for *habeas corpus*—broad enough, however, to cover *certiorari*). Before acting upon this application, the court designated J. C. B. Ehringhaus, Jr., Esquire, of the Raleigh Bar as counsel for the petitioner.

After several conferences with the petitioner and some vacillation on his part, counsel has filed the following report:

"Report of Counsel Appointed by the Court.

"To The Honorable The Chief Justice and the Associate Justices of the Supreme Court of North Carolina, Raleigh, North Carolina:

"Following receipt by the Court of a letter from the above named petitioner dated September 7, 1948, which said letter was in the nature

of a petition to review a judgment of Honorable John J. Burney, dated July 19, 1948, denying petitioner's application for discharge upon the return of a Writ of *Habeas Corpus,* the Court appointed the undersigned to advise and represent the petitioner in the Supreme Court. As counsel for petitioner, I beg leave to advise the Court as follows:

"As will appear from the record, the petition for Writ of *Habeas Corpus* alleged that the petitioner was unable to employ counsel and was denied benefit of counsel when he was required to plead to three capital charges of burglary and four indictments for larceny at the January Term, 1947, Pitt Superior Court. It is further alleged that the petitioner, who was then a minor without legal knowledge, training or experience in court procedure, advised the Trial Court before entering pleas to the indictments that he was unable to employ counsel and requested the Court to appoint counsel to advise with him and to protect his rights, but there was no counsel appointed to represent him at that time; that the petitioner was apprehensive of the consequences that might result to him from a public hearing of the offenses which were alleged to have occurred within the period of only a few weeks prior thereto; that he entered pleas of Guilty to the indictments of larceny and tendered pleas of Guilty of burglary in the Second Degree on the capital charges, which were accepted by the Solicitor; that the petitioner was thereupon sentenced to life imprisonment on each of the burglary indictments and to ten years imprisonment on each of the larceny charges, the sentence in all the cases to run concurrently; and that the petitioner is now serving his sentences in the Central Prison at Raleigh. It was further suggested and submitted that the disposition of the charges against the petitioner, especially the capital ones, without affording him the advice and assistance of counsel, was in violation of his constitutional and statutory rights.

"In the consideration of the rights of the petitioner, I came to the conclusion that serious statutory and constitutional questions were presented, particularly in the view of G. S., 15-4; *S. v. Farrell,* 223 N. C., 321, 26 S. E. (2d), 322; *Powell v. Alabama,* 287 U. S., 45, 77 L. Ed., 158, 84 A. L. R., 572. At the same time, however, and in the light of petitioner's present petition to review the judgment of Judge Burney in the *Habeas Corpus* proceeding, the question of the propriety of presenting these constitutional and statutory questions by way of *Habeas Corpus* proceedings arose. Under the authority of *S. v. Burnette,* 173 N. C., 734, and *S. v. Dunn,* 159 N. C., 470, I came to the conclusion that it was debatable whether the legality of the petitioner's trial based upon the suggestion of deprivation of statutory and constitutional rights could be decided on the merits in a proceeding in *Habeas Corpus* and that the Supreme Court, in the present state of the law, might feel justi-

fied in denying the petition for Writ of *Certiorari*, without deciding the case on its merits.

"On the other hand, I explored the possibility of raising such questions by means of Writs of Error *Coram Nobis*. Such a Writ, though seldom employed, is nonetheless a part of the established common law procedure, 24 C. J. S., 143, *et seq.,* and is a part of our procedure in North Carolina. G. S., 4-1; *Roughton v. Brown,* 53 N. C., 393; *Lassiter v. Harper,* 32 N. C., 392, and *Tyler v. Morris,* 20 N. C., 625. The Writ has been expressly held to conform to the due process of law requirements of the XIVth Amendment, particularly in factually similar situations. *Hysler v. Florida,* 315 U. S., 411; *Taylor v. Alabama,* 335 U. S., 252, decided June 21, 1948. Compare, *Nickels v. State,* 86 Fla., 208, 98 So., 502, on the facts, and *Chambers v. State,* 117 Fla., 642, 158 So., 153, on procedure.

"The pleas of Guilty, the expiration of the Term in which petitioner was tried, and the absence of opportunity to present these questions on appeal to the Supreme Court indicated that, chronologically, petitioner should, after giving notice, petition the Supreme Court for permission to file his petitions for Writs of Error *Coram Nobis* in the Superior Court of Pitt County. If upon petitioner's verification and the record in the *Habeas Corpus* proceeding, a *prima facie* showing of substantiality is made, the Court, in the exercise of its supervisory powers over inferior courts, could grant the petition and permit petitioner to proceed as above in Pitt Superior Court. N. C. Constitution, Article IV, Sec. 8; Compare *State v. Lawrence,* 81 N. C., 522, and *State v. Green,* 85 N. C., 600. See also note to *Halford v. Alexander,* 46 Am. Dec., 253-257.

"In my first interview with petitioner, I advised that, whatever the course he pursued to assert his statutory and constitutional rights, it could at best only result in new trials on the original Bills and that he would not be entitled to discharge unless acquitted on such new trials. Petitioner was repeatedly advised and enjoined that the assertion of his rights might again compel him to plead to the capital indictments. Being assured that he wished to have determined the legality of his trials, I advised him as indicated above and suggested either of two courses of action; first, to withdraw the letter of September 7, 1948 (which is broad enough to be considered as a petition for Writ of *Certiorari*), and file in the Supreme Court a new Petition for permission to file Petitions for Writs of Error *Coram Nobis* in Pitt Superior Court; or, second, to file an amendment to the September 7, 1948, letter and ask for the alternative relief of permission to file petitions for Writs of Error *Coram Nobis* in Pitt County should the Court be of the opinion that *Certiorari* should be denied.

IN RE TAYLOR.

"The petitioner has asked that I report to the Court that he does not wish to follow either of the courses suggested by me, but, rather, he desires that the Court take action upon his letter of September 7, 1948, without more. I now request that every consideration, consistent with the law, be given to his petition, for I am persuaded that, as regards the legality of his trials, he 'hath his quarrel just.' *State v. Farrell, supra*, and *Powell v. Alabama, supra*.

"I have caused to be filed with the Clerk a certified copy of the record in the *Habeas Corpus* proceeding, a certified copy of the record of petitioner's trials in Pitt Superior Court, and have served notice of the Petition for Writ of *Certiorari* upon the Attorney General. It is believed that the foregoing is sufficient under law and applicable Rules to give the Court jurisdiction to proceed to disposition of the Petition. Rule 34.

"I ask that the Court pardon the length of this and hope that it does not constitute a breach of the proprieties. However, I have felt that it was a part of my obligation and duty thus to make full report.

"Being mindful of the honor extended by the Court's appointment, I wish also to express my personal appreciation and that of my firm. Since my function as counsel in the Supreme Court is apparently terminated, it is requested that I now be relieved of further responsibility in the case and under my appointment. The Court can be assured, however, that I stand ready to serve further, either as counsel in the Supreme Court, as *amicus curiæ* or otherwise, should it be desired.

> Respectfully,
> /s/ J. C. B. EHRINGHAUS, JR.
> (EHRINGHAUS & EHRINGHAUS)"

Complying with the suggestion contained in the above report and a second written request from the petitioner, dated 18 September, insisting that his application be granted, we proceed to a consideration of the matter.

*J. C. B. Ehringhaus, Jr. (by Court appointment)* for petitioner.

*Attorney-General McMullan and Assistant Attorney-General Moody* for the State.

*R. Brooks Peters, Jr., for State Highway & Public Works Commission.*

STACY, C. J. The petitioner has been well advised, both as to the substantive and procedural law applicable to his situation, as will appear from an examination of the authorities cited in the report above set out.

Where the defendant in a criminal prosecution, less than capital, is unable to employ counsel, the appointment of counsel for him is discre-

In re Taylor.

tionary with the trial court. *S. v. Hedgebeth,* 228 N. C., 259, 45 S. E. (2d), 563. It is otherwise, however, in capital cases. G. S., 15-4; *S. v. Farrell,* 223 N. C., 321, 26 S. E. (2d), 322. "In a capital case, where the defendant is unable to employ counsel, and is incapable adequately of making his own defense because of ignorance, feeblemindedness, illiteracy, or the like, it is the duty of the court, whether requested or not, to assign counsel for him as a necessary requisite of due process of law." *Powell v. Alabama,* 287 U. S., 45, 77 L. Ed., 158, 84 A. L. R., 527.

The right to counsel in a capital case is vouchsafed the accused, both by constitutional provision—State and Federal—and by statutory enactment. G. S., 15-4; *S. v. Farrell, supra; Powell v. Alabama, supra; Wade v. Mayo,* 334 U. S., 672, decided 14 June, 1948.

The cases of *S. v. Pritchard,* 227 N. C., 168, 41 S. E. (2d), 287, and *Abernethy v. Burns,* 206 N. C., 370, 173 S. E., 899, are not to be overlooked. In the former, the court sought to appoint counsel for the accused. He declined to follow their advice, and they were relieved. In the latter, the plaintiff was able to employ counsel, but preferred "to go it alone," as was his right in a civil proceeding. G. S., 1-11.

The petitioner seems to think that he is entitled to be discharged on *habeas corpus.* In this he is mistaken. *In re McKnight, post,* 303. Failure to appoint counsel goes only to due process, and not to the guilt or innocence of the accused. In no event could he obtain more than a vacation of the judgments against him and a restoration of the indictments to the docket for trial. He alone can decide whether he wishes to assume the risks involved in such a move, bearing in mind, of course, that not all things lawful are expedient. The petitioner could find his last state worse than the first. However, he is entitled to pursue his rights, if so minded. All this has been pointed out to him by counsel. Up to now he seems to be obsessed with the idea, as he puts it, that "the writ of *habeas corpus* cannot be suspended in time of peace," which demonstrates anew the truth of Pope's assertion: "A little learning is a dangerous thing," which properly interpreted means that a smattering of expert knowledge in the hands of an inexpert is a dangerous thing. And so it is. Nevertheless, in deference to the petitioner's insistence, a ruling will be made on his petition for review.

It should be noted, perhaps, as pointed out in the answer to the petition filed here, that while charged with three capital crimes, the petitioner was allowed to plead guilty to lesser offenses under these indictments, and this after full consideration on the part of all concerned. Hence, the contention is made that the appointment of counsel for the petitioner was a matter resting in the sound discretion of the trial court,

and that no violation of any of his rights has been made to appear. *S. v. Hedgebeth, supra.*

However this may be and whatever the merits of the matter, it could avail the petitioner naught to review the judgment of Judge Burney dismissing the writ of *habeas corpus*. Such writ is inappropriate under our procedure to obtain for the petitioner the relief which he seeks, and he has been so advised. *In re Steele,* 220 N. C., 685, 18 S. E. (2d), 132; *S. v. Dunn,* 159 N. C., 470, 74 S. E., 1014; *S. v. Burnette,* 173 N. C., 734, 91 S. E., 364. Not only is this so under the apposite decisions, but it is also provided by G. S., 17-4, that "application to prosecute the writ shall be denied . . . (2) where persons are committed or detained by virtue of the final order, judgment or decree of a competent tribunal of civil or criminal jurisdiction, or by virtue of an execution issued upon such final order, judgment or decree." *In re Schenck,* 74 N. C., 607.

It follows, therefore, that the petition for review must be dismissed.

Mr. Ehringhaus is relieved of any further duty under his appointment here. He has diligently investigated the law, advised the petitioner of his rights, cautioned him in respect of the potential risks involved, filed certified copies of the records in the case, served notice on the Attorney-General, and he further signifies his willingness to comply with any additional request, albeit he has received no compensation for his services. Nothing has been overlooked and full consideration has been given to every phase of the matter.

*Certiorari* denied.